————————

No. 95-2240

————————

Steven C. Willis,

         Appellant,

    v.

United States of America,

         Appellee.

\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of South Dakota.
\*
\*
\*

————————

Submitted:  March 15, 1996

Filed:  July 1, 1996

————————

Before FAGG, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

————————

WOLLMAN, Circuit Judge.

Steven C. Willis was tried for bank fraud, found guilty on all counts, and sentenced to two concurrent terms of thirty-six months' imprisonment and to thirty-six months' supervised release. He was also ordered to pay restitution in the amount of $23,806.74. We affirmed his conviction on direct appeal. United States v. Willis, 997 F.2d 407 (8th Cir. 1993), cert. denied, 114 S. Ct. 704 (1994).

Thereafter, Willis brought this section 2255 motion, which the district court[1] referred to a magistrate judge.[2] The magistrate judge recommended dismissing Willis's motion without an evidentiary hearing. The district court accepted that recommendation and entered an order denying the motion. Willis now appeals from that

————————

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

[2]The Honorable Marshall P. Young, United States Magistrate Judge for the District of South Dakota.

order, arguing by way of alternative relief that the order be reversed and the case remanded for an evidentiary hearing.

## I.

Willis is a well-educated man. He holds degrees in law (J.D.) and business (M.B.A.) and is a certified public accountant. The scheme that led to Willis's conviction began with his formation of a partnership called Rec Co, with Steve Ettles and Charles Hopp, for the purpose of purchasing a Sioux Falls bowling alley.

Willis's and Hopp's share of the purchase price was financed by First Federal Savings Bank (First Federal), where Ettles worked as a loan officer. The deception began immediately upon the formation of the partnership when, contrary to bank policy, Ettles failed to inform the bank of his affiliation with Willis and Hopp before extending loans to them.

The deception escalated when the partnership began to experience financial difficulties and Ettles became reluctant to loan more of First Federal's money directly to the partnership. The three partners began recruiting friends and employees to borrow additional money for Rec Co's benefit. The partners then guided the borrowers through the application process, using Ettles' position at First Federal to ensure that the applications would be successful. The nominee borrowers had no intention of personally repaying the loans; they simply allowed the partners to use their names and financial information to obtain the loans. To conceal from First Federal the true purpose of these loans, false information was provided on the loan application forms.

The nominee borrowers were assured that the true beneficiaries of the loans, Rec Co or the partners, would repay the loans. Some borrowers received kickbacks for their role in obtaining money for Rec Co. When the loans became due and the partners could not repay

as promised, they secured new nominee loans to meet these obligations, thus driving Rec Co deeper and deeper into debt. Finally, when several of the loans became past due and the nominee borrowers began to face repercussions from the outstanding loans, the bank was alerted to the scheme.

Prior to Willis's indictment, Ettles pleaded guilty to three felony counts and, pursuant to a plea agreement, agreed to testify for the government. Hopp later pleaded guilty to one count of conspiracy to commit bank fraud and agreed to testify against Willis.

## II.

Willis alleges that he received ineffective assistance of counsel, arguing that trial counsel failed to conduct an adequate investigation of Ettles' plea agreement and failed to effectively cross-examine Ettles concerning that agreement. On direct appeal, Willis's trial counsel acknowledged that he knew of Ettles' plea agreement, which on its face stated that it was the full agreement between the parties. He argued, however, that the government had violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to turn over Ettles' sentencing transcripts, which showed that the government had dropped eighteen counts against Ettles in exchange for his plea and further cooperation with the government. We rejected this claim, holding that the government had no duty to turn over documents that counsel could have discovered by investigating the district court file. See Willis, 997 F.2d at 412. Willis now renews this claim on collateral attack as the basis for a finding of ineffective assistance of counsel.

To prevail on an ineffective assistance of counsel claim, Willis must show that his attorney's performance was constitutionally deficient and that his right to a fair trial was prejudiced by that deficient performance. Strickland v.

Washington, 466 U.S. 668, 687 (1984).

We first address Willis's claim that counsel was ineffective for failing to adequately cross-examine Ettles.  Counsel's cross-examination, which spans forty-two pages of the record, provided the jury with a detailed picture of where Ettles' loyalties lay.  Counsel began by inducing Ettles to admit that he had refused to speak with an investigator sent by Willis's counsel before trial because he did not want to give the defense "any ammunition."  He further questioned Ettles regarding his plea agreement, eliciting an admission from Ettles that his guilty plea involved charges unrelated to his partnership with Willis.  Willis's attack on counsel's cross-examination in substance boils down to counsel's failure to follow up his questions concerning the plea agreement with the question, "Isn't it true that if you do not testify as the government wishes, you might be subject to prosecution for claims that have been dropped?"  Even if an affirmative answer to this question would have been certain, and it is not a foregone conclusion that it would have been, counsel's failure to ask it is not the type of error, if indeed it was error at all, that the Sixth Amendment functions to correct.  In hindsight, there are a few, if any, cross-examinations that could not be improved upon.  If that were the standard of constitutional effectiveness, few would be the counsel whose performance would past muster.  Accordingly, we conclude that trial counsel's cross-examination did not fall short of effective assistance.

Turning to the failure-to-investigate claim, on direct appeal we characterized counsel's actions as a "fail[ure] to exercise diligence in investigating the file."  Willis, 997 F.2d at 413.  We need not decide whether this failure rose to the level of constitutionally deficient performance, because we find, as we will discuss below, that even if counsel's performance was deficient, Willis was not prejudiced by it.  See Schneider v. Delo, No. 95-2969, slip op. at 3 (May 30, 1996).

-4-

To establish prejudice, Willis must show that counsel's alleged errors were "so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

Willis attempts to characterize the trial as a simple credibility contest between himself and Ettles--Ettles claiming that Willis had knowledge of the fraud, and Willis claiming that he did not. Willis argues that despite counsel's exhaustive cross-examination of Ettles, further impeachment of Ettles would likely have tilted the credibility balance in Willis's favor by alerting the jury to the possibility that the dropped charges could have been revived had Ettles not cooperated sufficiently. Although Willis's intent to defraud was a key issue at trial, his claim that this issue turned entirely on his and Ettles' testimony is belied by the record, which contains other evidence of Willis's knowledge of and participation in the fraud.

For example, Ettles' testimony that Willis had knowingly falsified loan documents was supported by Becky Hewitt, one of the nominee borrowers and an employee of Willis's drycleaning business. Hewitt testified that Willis brought the loan application to her to sign and paid her $250 for her role as nominee borrower. The loan application submitted to the bank contained false information, which Hewitt denied providing, including false entries regarding her income, savings, the value of her house, and the purpose of the loan. A handwriting expert identified some of false entries as being in Willis's handwriting.

Moreover, additional evidence supports Ettles' testimony that Willis knew of the fraudulent nature of the irrevocable letters of credit that were prepared by Ettles without the bank's knowledge and thereafter provided to several of the nominee borrowers to induce them to borrow money for Rec Co. These letters stated that the bank guaranteed payment of the loans in the event that the

beneficiary (Rec Co) failed to pay. Typically, the bank would provide such letters only when the loan beneficiary had a line of credit at the bank. Willis clearly knew that Rec Co had no such credit line with First Federal, as the company's credit deficiency was the sole reason for the nominee loans. Willis's claim that he did not understand the nature of letters of credit sufficiently to know that these were not legitimate is belied both by Willis's extensive education and by codefendant Hopp's testimony that Willis had admitted to him concern over a letter of credit that he had written to support one of the nominee loans.

Although Willis argues that his case is the mirror image of Reutter v. Solem, 888 F.2d 578 (8th Cir. 1989), we think that there are significant differences between the two cases. Unlike Reutter, in which the state's case "depended almost entirely on Trygstad's testimony," 888 F.2d at 581, the government's case against Willis did not rest almost entirely upon Ettles' testimony. True, Ettles was an important witness for the government--indeed, probably the principal witness--but, as pointed out above, there was other evidence tending to establish Willis's guilt. Moreover, and most significantly, Ettles had pleaded guilty, had been sentenced, and was serving time in the penitentiary at the time of Willis's trial. There were no more charges to be dropped and no further concessions to be made by the government in return for his testimony. In contrast, unbeknownst to Reutter's counsel, witness Trygstad in Reutter was slated to appear at a commutation hearing soon after Reutter's trial, a hearing that was of utmost importance to Trygstad and from which he stood to reap a specific, substantial benefit depending upon the state's recommendation to the parole board, a recommendation that could only have been influenced by the nature of Trygstad's testimony at Reutter's trial. Thus, Willis's case is not Reutter redux.

We conclude, therefore, that the alleged deficiencies in trial counsel's performance do not undermine our confidence in the jury's

verdict.

## III.

Willis argues that instruction #11 violated his due process rights, that counsel's failure to object to this instruction amounted to ineffective assistance, and that counsel was ineffective for failing to offer an instruction on good faith.

Because Willis failed to challenge the contested portion of instruction #11 both at trial and on direct appeal, he cannot obtain relief on his due process claim unless he shows cause and prejudice for his procedural default. See Ried v. United States, 976 F.2d 446, 448 (8th Cir. 1992). As cause, Willis offers his counsel's alleged ineffective assistance.

Jury instruction #11 reads, in relevant part:

> Intent to defraud a bank exists whenever the defendant acts knowingly and the result of his or her conduct would be to defraud the bank, regardless of motive. Reckless disregard of the interests of the bank is equivalent of intent to defraud.

A majority of circuits that have addressed the question whether reckless disregard of the interests of the bank is sufficient to prove intent to defraud have answered in the affirmative. See United States v. Crabtree, 979 F.2d 1261, 1269 (7th Cir. 1992) (holding that reckless disregard of bank's interests is equivalent to intent to defraud under 18 U.S.C. § 656, the parallel bank fraud statute applicable to bank employees), cert. denied, 114 S. Ct. 216 (1993); United States v. Hoffman, 918 F.2d 44, 46 (6th Cir. 1990) (per curiam) (same); United States v. Cyr, 712 F.2d 729, 732 (1st Cir. 1983) (same); United States v. Krepps, 605 F.2d 101, 104 (3rd Cir. 1979) (same); United States v. Larson, 581 F.2d 664, 667 (7th Cir. 1978) (same). But see United

-7-

States v. Adamson, 700 F.2d 953, 965 (5th Cir.) (en banc), cert. denied, 464 U.S. 883 (1983). Moreover, the minority position articulated by the Fifth Circuit merely holds that the intent to defraud should not be equated with reckless disregard. Rather, the jury should be instructed that it may infer the intent to defraud from a reckless disregard of the bank's interests. See Adamson, 700 F.2d at 965. As the Adamson dissent points out, such a distinction is mere semantics, and the chance that it will influence the outcome of the trial is "so tenuous as to be more meaningful in the classroom than the courtroom." Id. at 969.

In United States v. Beran, 546 F.2d 1316 (8th Cir. 1976), cert. denied, 430 U.S. 916 (1977), a case involving a violation of 18 U.S.C. § 656, we said:

> Criminal intent may be inferred from all the facts and circumstances of the case. It "exists if a person acts knowingly and if the natural result of his conduct would be to injure or defraud the bank even though this may not have been his motive."

Id. at 1321 (citations omitted) (quoting United States v. Schmidt, 471 F.2d 385, 386 (3rd Cir. 1972)).

The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one. It does not require counsel to argue for an instruction that is supported by only a minority of circuits and which, in effect, appears to make only a semantic difference. Counsel was not ineffective for failing to challenge an instruction that finds support in our holding in Beran, as well as in the decisions of the majority of the circuits that have ruled upon the question.

Willis contends that his trial counsel was ineffective for failing to proffer an instruction on good faith. It is true that good faith constitutes a complete defense to a charge of fraudulent

-8-

intent and that a defendant is entitled to a good faith instruction where one has been requested and finds support in the evidence. See United States v. Casperson, 773 F.2d 216, 222-23 (8th Cir. 1985). We find, however, that the instructions in the present case, which set out the elements of bank fraud and stated that a specific intent to defraud was required, were adequate to convey to the jury that if it found that Willis acted in good faith it could not find him guilty of bank fraud. Moreover, Willis's counsel asserted this good faith defense repeatedly in his closing argument, arguing that Willis did not knowingly participate in Ettles' deception of the bank and thus did not have the requisite intent to defraud. Accordingly, counsel's failure to proffer a specific instruction on good faith did not fall outside the wide range of professionally competent assistance. See Strickland, 466 U.S. at 689.

## IV.

We hold that the district court did not err in denying the section 2255 motion. Likewise, we hold that the district court did not abuse its discretion in denying the motion without an evidentiary hearing. See, e.g., Payne v. United States, 78 F.3d 343, 347 (8th Cir. 1996). Accordingly, we deny Willis's alternative prayer that the case be remanded to the district court for an evidentiary hearing.

The district court's order is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-