# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3940

_____

United States of America,        *
        *
      Appellee,        *
        *   Appeal from the United States
   v.        *   District Court for the Southern
        *   District of South Dakota.
Joe Leon Mulder,        *
        *
      Appellant.        *

_____

Submitted:  March 10, 1998
Filed: June 16, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BATAILLON,[1] District Judge.
_____

BATAILLON, District Judge.

Joe Leon Mulder was convicted of one count of bank fraud in violation of 18 U.S.C. § 1344.  The district court sentenced Mulder to eighteen months in prison, to be followed by three years of supervised release.  Mulder appeals, asserting that the district court erred in making evidentiary rulings, in denying his motion for new trial based on newly discovered evidence, and in construing the sentencing guidelines

---

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

relating to downward departure. Upon review, we reverse and remand the case for a new trial.

## I. BACKGROUND

Joe Leon Mulder resides in Lake Benton, Minnesota. In 1989, Mulder was in the business of feeding cattle and raising calves. He lived on a rented fifteen-acre farm site owned by Glenn Krog, who also farms in Lake Benton. Beginning in 1987, Krog loaned Mulder money to buy calves, and Mulder remained indebted to him.

In May, 1989, Mulder applied for a loan with the Corn Exchange Bank, located in nearby Elkton, South Dakota. Mulder wanted to purchase fifteen cows and twenty-one heifers. Marvin Moore, a commercial lending officer, dealt with Mulder during his relationship with the bank. On May 31, 1989, Moore completed a financial statement which Mulder signed. Gov't Ex. 10. The financial statement indicated that Mulder did not own any real estate. Under the liabilities column, the financial statement had an entry for cattle owing to Mr. Glenn Krog in the amount of $61,990.00. The backside of the financial statement recorded that Mulder's liability to Krog was secured by 106 steers valued at $62,752.00.

In addition to financial statements, the bank maintained a loan commentary sheet on Mulder. Def. Ex. A. The commentary contains entries made by Moore and other bank employees from May 1989 through March 1995. The commentary sheet makes no reference to Mulder owning real estate. Three separate entries on the loan commentary sheet reference Mulder's debt to Krog.[2]

---

[2]An entry dated May 1989, states ". . . owes $45,000 to Krog. . . ." The entry dated October 11, 1989, states "has debt to neighbor of $50,000.00 on cattle." The entry dated February 6, 1990, states "[o]wes neighbor, Glen Krog, approximately $58,000 on cattle in yard." Def. Ex. A.

To secure its promissory note, the bank entered into a security agreement with Mulder on May 31, 1989. It secured its interest with fifteen head of Holstein cows and twenty-one Holstein heifers. Gov't Ex. 11. In October 1989, the bank entered into another security agreement with Mulder for the purpose of securing all swine and their young, their products and produce, and all feed produced in the farming operation. Gov't Ex. 12. On May 7, 1990, the bank entered into a third security agreement with Mulder which covered inventory, equipment, farm products, accounts, instruments, documents, chattel paper and other payments, and general intangibles. Gov't Ex. 15.

On August 3, 1990, the bank loaned Mulder $50,000.00 at an annual interest rate of 12.5 percent for renewal of notes, feed, and the balance of the acreage. Gov't Ex. 17. The bank secured the note by a security agreement dated May 7, 1990. On August 31, 1990, the bank loaned Mulder $12,000.00 for the purchase of seventeen heifers and for feed. Gov't Ex. 13. The bank secured this loan by security agreements dated May 31, 1989, October 11, 1989, and May 7, 1990.

On February 6, 1991, Moore completed another financial statement on Mulder which Mulder signed. Gov't Ex. 18. The financial statement lists farm real estate with a value of $93,500.00. Schedule A lists two owned properties -- a ten-acre property known as Thompson farm valued at $17,000,00 and a fifteen-acre property known as Hollywood Acres valued at $76,500.00. The liabilities section of the financial statement references no debt owing to Krog.

The bank generated a computerized commercial review spreadsheet on Mulder dated May 16, 1991. Def. Ex. B. Under current assets, the spreadsheet contains a zero value for the homestead, a land value of $16,000.00, and an improvements value of $77,500.00. On June 21, 1991, the bank extended Mulder a line of credit in the amount of $165,000.00. Gov't Ex. 20. The bank determined that the existing collateral for the line of credit remained adequate. The bank secured its line of credit by the security agreement signed by Mulder on May 7, 1990.

Mulder signed another financial statement for the bank on December 3, 1991. The financial statement listed two fixed real estate properties -- a fifteen-acre home farm site valued at $80,000.00 and a ten-acre site valued at $50,000.00. The financial statement did not identify a liability to Krog. Gov't Ex. 21. On February 26, 1992, the bank loaned Mulder $60,000.00. Gov't Ex. 22. The bank secured its promissory note by a real estate mortgage dated February 23, 1992, and a security agreement dated May 7, 1990. Mulder gave the bank a mortgage on the fifteen-acre building site owned by Krog. Gov't Ex. 5. Moore testified that the bank did not verify ownership of the mortgaged property prior to making the loan to Mulder. Tr. 91:7-8.

On July 31, 1992, Moore wrote Jerry Remund, a certified appraiser, requesting an appraisal on the dairy acreage. Def. Ex. D. Remund prepared an appraisal report as of August 15, 1992, and appraised the acreage at an appraised value of $41,000.00. Def. Ex. E. The appraised value was lower than any value recorded on Mulder's financial statements. The appraisal contained no title search and did not identify the property owner of record.

Mulder provided the bank with a signed financial statement dated August 14, 1992, prepared by an outside source. Gov't Ex. 23. The financial statement listed two long-term farm assets -- a fifteen acre farmstead home valued at $100,000.00 and a ten-acre Thompson's dairy farm valued at $83,000.00. The financial statement identified no liability owing to Krog.

On November 13, 1992, Mulder signed a promissory note prepared by the bank in the amount of $145,000.00 for the renewal of outstanding notes. Gov't Ex. 24. The bank secured the note by a security agreement dated May 7, 1990, and a dairy assignment dated November 13, 1992. In February 1993, Mulder presented the bank with a signed financial statement prepared by an outside source. Gov't Ex. 25. The balance sheet listed long-term farm assets of buildings and improvements totaling $210,500.00.

-4-

The bank prepared another promissory note in the amount of $10,000.00 for Mulder on March 24, 1993, which was not signed by Mulder. Gov't Ex. 26. The bank secured the promissory note by a security agreement dated May 7, 1990, and an assignment of a certificate of deposit. On June 21, 1993, Moore prepared a financial statement on Mulder which he signed. Gov't Ex. 27. This financial statement listed two long-term or fixed assets -- a ten-acre dairy site valued at $100,000.00 and a fifteen-acre building site valued at $110,500.00.

On June 21, 1993, the bank prepared a promissory noted in the amount of $141,850.17 secured by security agreements dated May 7, 1990, and November 13, 1990. The promissory note was not signed by Mulder. Gov't Ex. 28. On October 12, 1993, the bank prepared two promissory notes in the amounts of $137,000.00 and $10,000.00. Gov't Exs. 29 & 30. These promissory notes were also not signed by Mulder.

Glenn Krog testified that in June 1993, he discovered that the bank had taken a mortgage on his acreage. Tr. 55:7-11. In June 1993, his attorney notified the bank by letter that it had taken a mortgage on Krog's property. Tr. 56:2-4. In December 1993, Moore received documents from Krog evidencing Mulder's indebtedness to Krog. Gov't Exs. 7-8.

In December 1993, Mulder presented Moore with a financial balance sheet prepared by an outside source. Gov't Ex. 31. The financial statement listed two long-term farm assets, a dairy valued at $100,000.00 and a home place valued at $110,500.00. The balance sheet, dated December 3, 1993, was not signed by Mulder. As of December 1993, Mulder owed the bank $204,736.00 on two promissory notes. Tr. 107:23. Moore testified that the bank ultimately wrote off $132,000.00 in bad loans to Mulder. Tr. 108:10-11.

The indictment charges that from on or about February 6, 1991, and ending on or about December 3, 1993, Mulder knowingly devised a scheme and artifice to defraud the Corn Exchange Bank of Elkton, South Dakota, to obtain moneys, funds, credits, and assets owned by means of false and fraudulent representations. The case was tried to a jury which found the defendant guilty of one count of bank fraud in violation of 18 U.S.C. § 1344.

## II. DISCUSSION

On appeal, Mulder makes several challenges to his conviction and sentence. Through his counsel, Mulder contends that (1) the district court erred in excluding a financial statement of Mulder's dated October 18, 1991, (2) the district court erred in denying his motion for new trial, (3) the district court failed to depart downward pursuant to U.S.C.G. § 5K2.0, and (4) the district court erred in excluding testimony of a defense witness. We consider these arguments in turn.

Mulder first challenges the district court's exclusion of Def. Ex. C, a financial statement on Mulder dated October 18, 1991. Defense counsel first introduced Exhibit C during the cross-examination of Marvin Moore, a Vice President and commercial lender at Corn Exchange Bank. The document titled "Financial Statement and Loan Application" was prepared by Russell Bank on October 18, 1991, and signed by Mulder. The financial statement listed two properties under the category "Fixed Assets" -- a fifteen-acre building site valued at $80,000.00 and a ten-acre building site valued at $50,000.00 for a total fixed asset value of $130,000.00. Below "Fixed Assets" is a category "Rented Land" that records two properties -- a fifteen-acre building site and a ten-acre building site.

On cross-examination of Marvin Moore, Mulder's counsel established that Exhibit C had been supplied to the bank by the Russell Bank and that the financial statement was contained in the bank's lending file on Joe Mulder. Tr. 123:16-23. The

government objected to its admission, and the Court took the exhibit under advisement. Tr. 124:4-15. Following the jury instruction conference, the district court heard arguments on the admissibility of Defense Exhibit C. Tr. 156:10-25; 157:1-25; 158:1-20. Defense counsel argued that the exhibit was both relevant and crucial to Mulder's good faith defense because Exhibit C supported Mulder's contention that he advised the bank that he rented the fifteen-acre building site. Tr. 156:13-19, 23-25; 157:1-4. The government objected to Exhibit C because it was not one of the financial statements relied on by the bank and was not relevant to the charges in the case. Tr. 158:7-11. The district court determined that Exhibit C was "internally inconsistent," Tr. 158:13-15, was clearly erroneous in listing the ten-acre building site as rented, and was highlighted to divert the jury's attention away from the valuations contained in the financial statement. Tr. 158:15-19. Based on these findings, the district court excluded Exhibit C.

On appeal, the defendant argues that the district court abused its discretion in excluding Exhibit C. The defendant contends that Exhibit C is documentary evidence probative of Mulder's contention that he was renting the farmstead, probative of his credibility and his good faith defense. Mulder also claims that Exhibit C affects the outcome of the action, because a prima facie element of the government's case was Mulder's representations relating to ownership of the fifteen-acre building site.

Relevant testimony is assumed admissible, Fed. R. Evid. 402, unless its probative value is "substantially outweighed" by the possibility of unfair prejudice. Fed. R. Evid. 403. Once a party has demonstrated the relevance and probative value of the evidence, the role of the district court is simply to determine whether admission of the exhibit would create an "undue tendency to suggest decision on an improper basis." Notes of Advisory Committee, Fed. R. Evid. 403. A district court may exclude relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. A court of appeals gives broad deference to a district court's determinations under Rules 401-403 of the Federal Rules

of Evidence. *United States v. Holmes*, 822 F.2d 802, 806 (8th Cir. 1987). An appeals court does not reweigh the evidence, but determines only whether the district court abused its discretion in excluding the evidence. *Id.* (citing *United States v. Derring,* 592 F.2d 1003, 1007 (8th Cir. 1979)).

We conclude that the district court abused its discretion in excluding Exhibit C. We agree that Exhibit C, which was in the bank's possession and contained in the defendant's lending file, was relevant to the requisite element of intent to defraud. Exhibit C was also probative of the defendant's good faith defense. Good faith constitutes a complete affirmative defense to a charge of fraudulent intent. *Willis v. United States,* 87 F.3d 1004, 1008 (8th Cir. 1996). Moreover, Exhibit C was not unfairly prejudicial to the government. During its case in chief, the government offered three financial statements prepared by outside sources. Gov't Exs. 23, 25 and 31. Although Exhibit C can be construed as internally inconsistent, Mulder should have been allowed an opportunity to explain the inconsistencies to the jury. Because Mulder's intent to defraud was a material issue at trial, we conclude that the district court's exclusion of Exhibit C constituted reversible error, and we remand for a new trial.

Inasmuch as this case requires a retrial, we consider the defendant's other evidentiary claim that the district court erred in excluding evidence concerning the routine practices of Marvin Moore in handling financial statements. "We review the evidentiary rulings of a district court only for abuses of discretion, and will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict." *United States v. Ballew,* 40 F.3d 936, 941 (8th Cir. 1994) (citations omitted).

The defendant contends that pursuant to Rule 406 of the Federal Rules of Evidence, Mr. Dagel's testimony was admissible as bearing on Marvin Moore's routine practice in handling financial statements and for purposes of impeachment.

Following an offer of proof, the district judge excluded the testimony. After carefully reviewing the testimony of Marvin Moore, we conclude that the District Court did not abuse its discretion when it excluded the evidence. The issue at trial was whether Mulder intentionally defrauded the bank by knowingly making false representations for the purpose of obtaining loan monies. The proffered testimony of Rex Dagel on the routine practice of Marvin Moore in handling financial statements at the bank was not relevant to this issue. *United States v. Elliott,* 89 F.3d 1360, 1369 (8th Cir. 1996), *cert denied, ____ U.S. ____, 117 S.Ct. 963 (1997).*

Dagel's testimony may have been admissible for purposes of impeachment. However, no evidence was elicited from Marvin Moore concerning either his routine practice, or his conduct in preparing the loan documents for the defendant. The issue of Moore's routine practice was not squarely presented to the trial court. Hence, the proffered testimony of Rex Dagel related to a peripheral matter on which the admission of extrinsic evidence is subject to the sound discretion of the trial court. *United States v. Johnson,* 968 F.2d 765, 766 (8th Cir. 1992). Because Rule 608(b) of the Federal Rules of Evidence admonishes against the introduction of extrinsic evidence, we conclude that the district court did not abuse its discretion when it excluded the proffered testimony of Mr. Dagel.

In light of our disposition above, we need not address the defendant's remaining assignment of errors .

## III. CONCLUSION

We reverse and remand this case for a new trial with the questioned evidence, if offered, to be admitted or excluded in accordance with this opinion.

WOLLMAN, Circuit Judge, concurring and dissenting.

I concur in that portion of the court's opinion which holds that the district court did not err in excluding testimony concerning Moore's practices in handling financial statements.

I respectfully disagree with the court's holding that the district court abused its discretion in excluding Exhibit C. If this case presented a close question on the sufficiency of the evidence, I might well agree that Mulder suffered prejudice as a result of the district court's ruling. When viewed in the light of the overall strength of the government's case, however, Exhibit C's probative value would have been so slight that its exclusion does not undermine my confidence in the verdict. As the government points out, Exhibit C was prepared by a bank in Russell, Minnesota, and not by Moore. Moreover, five of the six financial statements submitted by Mulder to Corn Exchange Bank were dated after October 18, 1991, the date shown on Exhibit C.

At best, then, Exhibit C would have constituted a straw floating on the massive sea of evidence against Mulder. Thus, the district court's error in excluding the exhibit, if error at all, was harmless.

I would affirm the conviction.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.