# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1349

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Arkansas. |
| | * | |
| James N. Patterson, | * | |
| | * | |
| Defendant-Appellant. | * | |
| | * | |

_____

Submitted: June 9, 1998
Filed:      July 8, 1998

_____

Before WOLLMAN and MURPHY, Circuit Judges, and KYLE[1], District Judge.

_____

MURPHY, Circuit Judge.

James N. Patterson appeals his convictions and sentences for two counts of conspiracy (18 U.S.C. § 371), bank fraud (18 U.S.C. § 1344), bank embezzlement (18 U.S.C. § 656), and two counts of false bank entry (18 U.S.C. § 1005). He was sentenced to two years imprisonment on each count, to run concurrently, and a $15,000 fine. Patterson asserts there was insufficient evidence to sustain his convictions for

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

counts five and six (conspiracy and false bank entries), that he is entitled to a new trial on counts one through four (conspiracy, bank fraud, bank embezzlement, and false bank entries) because the jury's consideration of those charges was tainted by evidence related to counts five and six, and that he is entitled to resentencing. We affirm.

The background facts are stated in a light favorable to the verdict. See U.S. v. Smith, 104 F.3d 145, 147 (8th Cir.1997). James Patterson became the largest stockholder and president of the Citizens Bank of Lavaca, Arkansas in 1979. Patterson ran the day to day operations of Citizens Bank, and in 1989 he and five other bank officers created Executive DC (EDC), a business to sell debt collection policies to the bank's clientele. The name of the bank was changed in 1992 to the River Valley Bank & Trust.

There was evidence relating to movement of funds within the bank by Patterson and others. In December 1990, Patterson and Gary Carmack, the senior vice president of the bank and a partner in EDC, agreed that they would create false documents to move $14,000 from the bank's data processing account to the EDC account. The money was deposited into the EDC account on December 5, without disclosure to anyone else on the bank board of directors. Later, Patterson, Carmack and Larry Owen, another bank officer and EDC partner, each withdrew $4,000 from the EDC account as a "personal bonus." The first four charges in Patterson's indictment arise from these acts.

In 1992 there were unusual transactions related to a loan and the purchase of furniture. On May 8, Patterson and Owen took out a $30,000 loan from the bank, and Patterson put the funds into the bank's bad debt reserve and falsely represented that the $30,000 credit was from a customer loan the bank had written off in 1989. Days after the loan transaction, Patterson and Carmack bought some used furniture for the bank for $3,500 and produced false documents and an invoice to indicate that the items had been purchased for $35,000 from a fictitious company. Patterson asked Carmack to

use the $35,000 invoice to create a $35,000 debit to the bank's furniture and fixtures account. Then a $35,000 cashier's check was made out to the fictitious furniture company, whose name resembled EDC. At the request of Patterson, Carmack deposited the cashier's check into the EDC account and then withdrew $30,027.86 from the account to pay off the $30,000 loan taken out by Patterson and Owen. The furniture was later sold for $35,000, and the proceeds from that sale were put back into the bank. These transactions involving the loan and the furniture are the basis for counts five and six charging conspiracy and false bank entry.

Patterson and Owen were indicted on charges of bank fraud, bank embezzlement, and two counts of conspiracy and false bank entry. Prior to this indictment, Gary Carmack had pled guilty to bank embezzlement and tax fraud for his part in the bank transactions in December of 1990. Carmack agreed to cooperate, and charges against Owen were later dropped. Patterson went to trial and was convicted on all six counts.

Patterson claims that he is entitled to an acquittal on counts five and six, which charge conspiracy and causing false bank entries. He says the government did not present evidence that he made the entries with the intent to deceive bank officers and examiners as required by 18 U.S.C. § 1005. The government counters that there is sufficient evidence to show that bank funds were improperly used to pay off Patterson's personal loan and that false documents were intentionally created to accomplish this. It argues that a jury could infer that the transactions had been done to deceive the bank board and bank examiners. It also points out that Patterson himself chose the overstated value ($35,000) to be used in the false documentation of the purchased furniture which was at the core of the false entry charge.

Our review of Patterson's argument for acquittal is quite narrow. See United States v. Smith, 104 F.3d 145, 147 (8th Cir.1997). "We will reverse a conviction for insufficient evidence and order the entry of a judgment of acquittal only if no

-3-

construction of the evidence exists to support the jury's verdict." United States v. Cunningham, 83 F.3d 218, 222 (8th Cir.1996). The trial record contains evidence that Patterson intended to defraud bank officials or examiners with the purposeful entry of false information. It is uncontested that Patterson intentionally caused false entries in the bank books. From this fact, the jury could have reasonably inferred that Patterson intended to defraud bank executives and examiners by causing the false entries. Intent may be based wholly on circumstantial evidence. See Smith, 104 F.3d at 147. It is for the jury to infer intent from all the facts and circumstances. See United States v. Krepps, 605 F.2d 101, 104 (3rd. Cir.1979). The jury was entitled to credit Carmack's testimony that steps were taken to cover up and disguise the transactions, even though he also claimed that they were not trying to deceive. Carmack testified that he and Patterson formulated false documents to "legitimize the whole deal" with the understanding that the more records they could show, the fewer questions they would encounter. The requisite intent could be inferred, and Patterson's claim of insufficient evidence must fail.

Patterson contends that he cannot be found guilty because he did not personally profit from the false bank entries or the underlying transactions. As this court has pointed out, "(t)he fact that appellant did not personally profit from his criminal conduct is not a legal excuse for his action." United States v. Dougherty, 763 F.2d 970, 972 (8th. Cir.1985). And contrary to Patterson's assertions, § 1005 does not require that the defendant's actions cause actual injury to the bank. See Krepps, 605 F.2d at 109. Patterson is also incorrect in his assertion that the false entries must be communicated to the bank examiners or officers, for there is no such requirement under § 1005.

Patterson argues that his conviction on the first four counts should be reversed and the charges retried because of the prejudicial impact of evidence relating to counts five and six. This argument need not be discussed because the record supports the convictions on those counts and the related evidence was properly heard by the jury.

Patterson also disputes some of the court's sentencing findings. The district court found that the amount of the loss to the bank was in excess of $40,000, resulting in a five level increase to the base offense level. See U.S.S.G.§ 2F1.1. It arrived at that figure by combining its findings of loss on counts one through four ($14,000) and on counts five and six ($30,027.86). The court also indicated that if the total amount of the loss were under $40,000, Patterson's conduct would warrant an upward departure to the same sentencing level. The court also found that Patterson's offenses involved more than minimal planning and enhanced his sentence by two levels.

The application of the guidelines is reviewed de novo, see United States v. Collins, 104 F.3d 143, 144 (8th Cir.1997), but the court's factual determinations are reviewed only for clear error. See United States v. Dierling, 131 F.3d 722, 736 (8th Cir.1997). To value the loss the district court used the commentary in Part F of the Guidelines Manual which pertains to offenses involving fraud and deceit. See U.S.S.G. § 2F1.1, comment. (n.7). This application note says the amount of loss "is the value of money, property, or services unlawfully taken." Id. The court did not err in using this method of valuation. The district court found that the bank funds used to pay off Patterson's personal debt, $30,027.86, were unlawfully taken because he had no legal claim to them for his private use. When this amount is added to the undisputed $14,000 loss on counts one through four, the total amount unlawfully taken exceeds $40,000. Because the district court did not clearly err in its findings of loss, there is no need to discuss whether Patterson's sentence could have properly been increased by an upward departure.

Patterson also disputes the finding that his convictions involved more than minimal planning, and argues there is no evidence that his offenses took more planning than is "typical for commission of the offense in a simple form." See U.S.S.G. § 2F1.1, comment. (n.2); U.S.S.G. § 1B1.1, comment. (n.1(f)). More than minimal planning can also be found "if significant affirmative steps were taken to conceal the offense." U.S.S.G. § 1B1.1, comment. (n.1(f)). The commentary lists examples such as "creating

purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered" or "several instances of taking money, each accompanied by false entries." Id. These examples are very close to what occurred in this case. The numerous false documents created in transactions in which Patterson was involved were "significant affirmative steps" to hide the offense. Patterson mistakenly argues that "repetition" is required to show more than minimal planning, citing United States v. Wilson, 955 F.2d 547 (8th Cir.1992), but that case only states that repetition may indicate more than minimal planning, not that it is required. See id. at 550. Moreover, the district court found that there was repeated use here of forged and falsified documents related to computer software, loan, and furniture scams. Its finding is not clearly erroneous.

There was sufficient evidence with which to convict Patterson on counts five and six and he has not shown entitlement to a new trial on counts one through four or to resentencing. Accordingly, the judgment is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT