# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-2275

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Scott Daniel Johnson, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: December 14, 1998
Filed: March 3, 1999

———————

Before LAY, McMILLIAN, and HALL,[1] Circuit Judges.

———————

HALL, Circuit Judge.

Scott Daniel Johnson ("Johnson") appeals his convictions and sentence for conspiracy to defraud a federal credit institution in violation of 18 U.S.C. § 371, fraud of a federal credit institution in violation of 18 U.S.C. § 1344, misapplication of funds from a federal credit institution in violation of 18 U.S.C. § 657, and false entries to

———————

[1]The Honorable Cynthia Holcomb Hall, United States Circuit Judge for the Ninth Circuit, sitting by designation.

a federal credit institution in violation of 18 U.S.C. § 1006. The district court[2] sentenced Johnson to fifty-seven months in prison. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## I.    FACTS

Johnson maintained personal and business accounts with the Renville Farmers Co-Op Credit Union ("RFCCU") to finance his cattle and hog farming operation. In the summer of 1986, Norman Westby ("Westby"), the RFCCU manager, informed Johnson that Johnson had reached his credit limit, and that the RFCCU board of directors had decided to stop extending credit to Johnson for his cattle operations. Johnson, however, continued to purchase cattle, writing checks that exceeded the funds in his account. When Westby called Johnson to inform Johnson of this problem, Johnson assured Westby that he had just sold cattle to cover any overdraft, and that he would deposit funds to cover the checks he had written. Westby honored the checks against the RFCCU's policy, but Johnson did not deposit funds to cover the overdraft as he had promised. Johnson continued to purchase cattle with checks drawn on his account, and Westby continued to call Johnson to inform him of the problems he was causing with his account. Although Johnson occasionally deposited into his account checks from the sale of cattle, Johnson never brought the account balance positive.

Later in the summer of 1986, Johnson wrote checks producing a $150,000 overdraft in his account. To conceal the overdraft, Johnson and Westby decided that Johnson would draw checks on his overdrawn account, and deposit those checks into that same account at the end of each month. Westby would immediately credit Johnson's account with these worthless deposits, making it appear that the account

---

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

had a positive balance. Two or three days later, Johnson's account would be debited for the amount of the checks deposited, revealing the true, negative account balance. In addition, Westby would take out unreported loans and apply the proceeds of those loans to Johnson's account. These loans would then be repaid through the same end-of-the-month check deposit scheme. Each month, Johnson would receive an account statement showing the positive month-end account balance become a negative account balance as the debits were recorded.

Johnson and Westby continued this practice at the end of each month. Johnson's account fell deeper into the red as Johnson continued to draw on the account to expand his business through cattle and land purchases. In addition, Johnson used proceeds from the scheme to pay for his wife's monthly living expenses, to make child support payments once he and his wife were divorced, to buy two cars, to make loans to other individuals, to pay phone, electric, and credit card bills, and to gamble at a casino. At various times, Westby urged Johnson to sell his cattle to cover the overdraft. When Johnson did not comply, Westby was forced to deplete customer accounts, take out a line of credit from a clearing bank, and sell off bank assets to cover the deficiency in Johnson's account. Westby informed Johnson of these consequences resulting from the scheme.

In November 1995, auditors discovered Johnson's account overdraft, which by then had grown to $7.9 million. The bank was rendered insolvent by these transactions, and the National Credit Union Association ("NCUA") stepped in to assume the RFCCU's liability. The NCUA liquidated Johnson's livestock, thereby reducing the overdraft to $4.1 million. Westby pled guilty to financial institution fraud, and testified against Johnson at trial. Johnson was convicted of conspiracy to defraud the RFCCU, bank fraud, misapplication of funds, and making false entries to a federal credit institution. Johnson was sentenced to fifty-seven months in prison.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Johnson contends that there was insufficient evidence to convict him.[3] We will reverse Johnson's convictions only if, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in favor of the government, "a reasonable jury must have had a reasonable doubt that the elements of the crime were established." See United States v. Goodson, 155 F.3d 963, 966 (8th Cir. 1998). We will affirm the conviction if there is "any interpretation of the evidence that would allow a reasonable jury to conclude guilt beyond a reasonable doubt." See United States v. Uder, 98 F.3d 1039, 1045 (8th Cir. 1996).

### 1.    Conspiracy

The government introduced sufficient evidence to show that during the summer of 1986, Johnson and Westby agreed that Johnson would deposit worthless checks into his account to conceal a growing overdraft. See 18 U.S.C. § 371; United States v. Wang, 964 F.2d 811, 813 (8th Cir. 1992) (requiring agreement to commit crime and overt act in furtherance thereof to convict for conspiracy). In addition, the government showed that Johnson knew of the purpose of the conspiracy based on Johnson's knowledge of the RFCCU's formal refusal to lend him more money, the nine-year duration of the scheme, and the growth in the size of the overdraft. See United States v. Hildebrand, 152 F.3d 756, 761 (8th Cir.) (requiring proof that conspirator knew purpose of conspiracy), cert. denied sub nom., Webb v. United

---

[3]Although it is unclear which of the four convictions Johnson is appealing, we will give him the benefit of the doubt and assume that he is appealing his convictions on all four counts.

States, 119 S. Ct. 575 (1998). Based on the foregoing, we affirm Johnson's conspiracy conviction.

**2.    Bank Fraud**

The government introduced sufficient evidence to show that Johnson aided and abetted Westby by knowingly executing a scheme to defraud a federally insured credit union. See 18 U.S.C. § 1344; United States v. Van Brocklin, 115 F.3d 587, 598 (8th Cir. 1997); see also United States v. Britton, 9 F.3d 708, 709 (8th Cir. 1993) ("A scheme violates § 1344(a) if the scheme is a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community."). The government demonstrated that Johnson knew that Westby had been told by the RFCCU's board of directors not to extend further credit to Johnson, that Johnson refused to sell his cattle to remedy the overdraft, and that Johnson knew that Westby was forced to sell off and encumber bank assets to prolong their scheme. See Willis v. United States, 87 F.3d 1004, 1008 (8th Cir. 1996) ("Criminal intent . . . exists if a person acts knowingly and if the natural results of his conduct would be to injure or defraud the bank even though this may not have been his motive." (citation omitted)). In addition, Johnson testified that he caused the false entries that appeared on his monthly account statement, from which the jury could have reasonably inferred that Johnson had intended to defraud the RFCCU. See United States v. Patterson, 148 F.3d 1013, 1015 (8th Cir. 1998). Finally, the size and growth rate of the overdraft, climbing from $150,000 in 1986 to almost $8,000,000 in 1995, was strong circumstantial evidence of Johnson's guilt. Cf. Britton, 9 F.3d at 709 (characterizing bank fraud statute as condemning "schemes designed to deceive in order to obtain something of value"). Based on the foregoing, we affirm Johnson's bank fraud conviction.

### 3. Misapplication of Funds

The government introduced sufficient evidence to show that Johnson aided and abetted Westby, an RFCCU officer, in misapplying funds belonging to the RFCCU. See 18 U.S.C. § 657; United States v. Chandler, 66 F.3d 1460, 1465 (8th Cir. 1995). The government demonstrated that Johnson knew that Westby was selling off bank assets, depleting customer accounts, and assuming a line of credit in order to hide Johnson's account overdraft. In addition, Johnson gave Westby signed, blank checks that Westby kept in his desk drawer to provide immediate coverage of the overdraft in the event of a surprise audit. Based on the foregoing, we affirm Johnson's misapplication of funds conviction.

### 4. Making False Entries

The government introduced sufficient evidence to show that Johnson, with the intent to defraud and with the knowledge of the falsity of the entry, aided and abetted Westby in making or causing to be made a false entry on RFCCU's books. See 18 U.S.C. § 1006; see also United States v. McDougal, 137 F.3d 547, 554 n.7 (8th Cir. 1998). The government demonstrated that Johnson knew that the monthly account statements that he received from the RFCCU were false, and that Johnson caused the falsity of those statements by writing worthless checks at the end of each month to conceal a large and growing overdraft in his account. In addition, the government showed that Johnson gave Westby signed blank checks to deposit when necessary, and that Johnson came into the bank to make sham deposits when Westby called him. See United States v. Blumeyer, 114 F.3d 758, 767 (8th Cir. 1997) (allowing jury to infer intent from circumstantial evidence). Based on the foregoing, we affirm Johnson's false entries conviction.

**B.     Sentencing Departure for Unusual Circumstances**

Johnson contends that the district court erred by denying his request for a downward departure based on the unusual circumstances of his case: the scheme was Westby's idea, Johnson believed his assets were at all times sufficient to cover the overdraft, and the liquidators failed to maximize the value of the collateral.  We have jurisdiction to review the district court's discretionary decision not to depart downward from the Guidelines only if the district court acted with an unconstitutional motive or erroneously believed "that it lacked the authority to consider a particular mitigating factor."  See United States v. Saelee, 123 F.3d 1024, 1025 (8th Cir. 1997).

Johnson failed to argue either that the district court had an unconstitutional motive in denying his downward departure request or that the district court erroneously believed it lacked the authority to depart based on the unusual circumstances that Johnson claimed.  In addition, there is no evidence in the record to suggest that Johnson could have made either of those claims.  Therefore, we do not have jurisdiction to review Johnson's sentencing claim.  See id.

**III.     CONCLUSION**

Based on the foregoing, we affirm the judgment of the district court.

AFFIRMED.

A true copy.

   ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.