**DETHMERS MANUFACTURING COMPANY, INC., Plaintiff,**

v.

**AUTOMATIC EQUIPMENT MFG. CO., Defendant.**

**No. C 96–4061–MWB.**

United States District Court, N.D. Iowa, Western Division.

Oct. 13, 1999.

David Tank of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, Iowa, Brian J. Laurenzo of Dorsey & Whitney, LLP, Des Moines, Iowa, for plaintiff.

Tim Engler of Harding, Shultz & Downs, Lincoln, Nebraska, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING MOTIONS IN LIMINE

BENNETT, District Court Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ..................................... 999

II. LEGAL ANALYSIS ..................................................... 1000
 A. Relevancy And Prejudice ............................................. 1000
 B. Dethmers's Motions In Limine ...................................... 1001
 1. Evidence about the Johnson reissue patent ......................... 1001
 2. Evidence of the Parent '851 patent ............................... 1002
 3. Name change evidence ............................................ 1003
 4. Evidence of dismissed counterclaims ............................. 1004
 5. Evidence of the value of the original Johnson patent ............. 1005
 6. Evidence of the October 4, 1994, letter ......................... 1006
 C. Evidence Of The Measure Of Damages ................................ 1006
 1. Damages available on the claims asserted ......................... 1007
 a. Breach of contract ......................................... 1008
 b. Promissory estoppel ........................................ 1009
 c. Unjust enrichment .......................................... 1010
 2. The admissibility of evidence of Automatic's profits ............. 1011
 3. On what items is evidence of damages calculations admissible? .... 1013
 4. Summary ......................................................... 1013

III. CONCLUSION ........................................................ 1013

## I. INTRODUCTION AND BACKGROUND

Trial is set to begin in this matter on October 18, 1999, and the case is now before the court pursuant to plaintiff Dethmers Manufacturing Company's September 27, 1999, and October 12, 1999, motions in limine, and pursuant to defendant Automatic Equipment Manufacturing Company's October 12, 1999, motion in limine. Courtesy copies of the latter two motions were sent to the court by facsimile transmission on October 8, 1999. At the court's request, the court also received supplemental letter briefs by facsimile on October 12, 1999. The court heard oral arguments on the motions in limine on October 13, 1999, and finds that the motions are now fully submitted.

At the oral arguments, plaintiff Dethmers Manufacturing Company, Inc., was represented by David Tank of Davis, Brown, Koehn, Shors & Roberts, P.C., in Des Moines, Iowa, and Brian J. Laurenzo of Dorsey & Whitney, LLP, also in Des Moines, Iowa. Defendant Automatic Equipment Manufacturing Company was represented at the oral arguments by Tim Engler of Harding, Shultz & Downs in Lincoln, Nebraska. The court was impressed not only with the cogency of counsels' oral arguments, but with the expeditiousness and coherence with which counsel for both parties marshaled authority and facts to address the various issues that arose quite suddenly in the course of final trial preparations. This case has been very contentious, but counsel have been models of civility and professionalism in their presentations to the court. The court has little doubt that this high level of professionalism will continue through trial of this matter.

The parties to this lawsuit are both makers of tow bars used to tow an automobile behind a recreational vehicle (R.V.). The principal claims and counterclaims in this lawsuit originally concerned infringement, validity, and enforceability of the parties' patents for such tow bars.[1] However, as a result of this court's rulings on summary judgment motions, see Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co., 23 F.Supp.2d 974 (N.D.Iowa 1998) (Dethmers I ); Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co., 70 F.Supp.2d 944 (N.D.Iowa 1999) (Dethmers II ) (publication pending), no patent claims, and none of Automatic's counterclaims, remain at issue here. Furthermore, Dethmers noti-

---

1. Dethmers' complaint, as amended, included the following ten claims: Count I for declaratory judgment of non-infringement, invalidity, and unenforceability of Automatic's patent, United States Patent No. 5,356,166 (the '166 patent or the Automatic patent); Count II for damages, injunctive, and declaratory relief, arising from alleged infringement by Automatic of Dethmers's own patent, United States Patent No. Re32,482 (the Re482 patent or the Dethmers reissue patent), which is a reissue of United States Patent No. 5,232,240 (the '240 patent or the Johnson patent); Count III for breach of contract, asserted by Dethmers as the assignee of Richard A. Parent, and concerning the "Parent Invention"; Count IV, a "statutory" claim, for misappropriation by Automatic of a trade secret, the "Parent Invention"; Count V, a "common-law" claim, for misappropriation of a trade secret, again, the "Parent Invention"; Count VI for conversion of the "Parent Invention"; Count VII for misappropriation of the "intellectual property" of Dethmers, again identi-

fied as the "Parent Invention"; Count VIII for unjust enrichment by Automatic as the result of its use of design concepts of the "Parent Invention" in its products; Count IX for promissory estoppel relating to the "Parent Invention"; and Count X for quantum meruit, also relating to the "Parent invention."

Automatic's counterclaims originally consisted of the following: Count I for declaratory judgment that Dethmers's original '240 patent and its Re482 patent are invalid, unenforceable, and not infringed by Automatic's products; Count II for "false advertising" in violation of the Lanham Act, 15 U.S.C. § 1125(a); Count III for "false marking" in violation of 35 U.S.C. § 292; Count IV for infringement of Automatic's '166 patent; and Count V for declaratory judgment of non-infringement, invalidity, and unenforceability of Dethmers's United States Patent No. 5,765,851 (the Parent patent or the '851 patent).

fied the court that it was dismissing five of its remaining state-law claims. Thus, the present action is proceeding to trial only on Dethmers's claims of breach of contract, unjust enrichment, and promissory estoppel.

All of these remaining claims involve the so-called "Parent Invention." The "Parent Invention" was an idea developed by Richard A. Parent for a new type of tow bar that involved a swivel or universal joint and folding tow bar arms. The tow bar could also be folded up on the back of an R.V. for storage when not in use. All of the remaining claims involve the assertion that Automatic has wrongfully used the "Parent Invention" in the design and manufacture of its tow bars without properly compensating Parent. Dethmers asserts these claims as Parent's assignee. The court determined in its ruling on the first round of summary judgment motions that, in this diversity action, these claims are governed by Nebraska law. *See Dethmers I*, 23 F.Supp.2d at 1002–05.

In the first of its motions in limine, Dethmers seeks to exclude six categories of evidence on relevancy and potential prejudice grounds pursuant to Federal Rules of Evidence 401, 402, and 403. In its second motion in limine, Dethmers formalized objections first raised in preparation of the final pretrial order to the admissibility of an October 4, 1994, letter from attorney Brian Laurenzo for Dethmers to Jay Hesse, Automatic's President. Dethmers's objections to this evidence are also on the grounds of relevancy and potential prejudice. Automatic's motion in limine seeks to exclude evidence from Dethmers's expert on the measure and calculation of Dethmers's damages, on the ground that those calculations are incorrect under applicable law, and therefore irrelevant.

## II. LEGAL ANALYSIS

### A. Relevancy And Prejudice

■ As noted just above, the parties principally challenge the admissibility of evidence on the grounds of relevancy and potential for prejudice. Rule 402 of the Federal Rules of Evidence provides generally that "[a]ll relevant evidence is admissible," while "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Rule 403, however, provides that even some relevant evidence may be excluded:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID 403. As the Eighth Circuit Court of Appeals recently explained,

> Relevant testimony is assumed admissible, Fed.R.Evid. 402, unless its probative value is "substantially outweighed" by the possibility of unfair prejudice. Fed.R.Evid. 403. Once a party has demonstrated the relevance and probative value of the evidence, the role of the district court is simply to determine whether admission of the exhibit [or other evidence] would create an "undue tendency to suggest decision on an improper basis." Notes of Advisory Committee, Fed.R.Evid. 403. A district court may exclude relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403.

*United States v. Mulder*, 147 F.3d 703, 707 (8th Cir.1998); *see also United States v. Molina*, 172 F.3d 1048, 1055–1056 (8th Cir. 1999) ("Federal Rule of Evidence 403 compels district courts to weigh the probative value versus the prejudicial effect of evidence that a party seeks to introduce at trial. See Fed.R.Evid. 403. Under the Rule 403 balancing test, a district court should exclude evidence where the prejudicial effect of admitting such evidence outweighs the evidence's probative value. *See [United States v.] Phelps*, 168 F.3d [1048,] 1057–58 [ (8th Cir.1999) ].". The court's discretion to admit or exclude evidence "is broad where, as here, the district court must balance the evidence's probative val-

ue against the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Porous Media Corp. v. Pall Corp.,* 173 F.3d 1109, 1117 (8th Cir.1999) (citing *United States v. Cody,* 114 F.3d 772, 777 (8th Cir.1997), and FED. R. EVID. 403, and also describing the "balancing process" under Rule 403 as "delicate"). The court will consider *seriatim* the categories of evidence the parties seek to exclude to determine whether Rule 403 or some other rule of evidence or legal principle should bar their admission.

### B. Dethmers's Motions In Limine

In its motions in limine, Dethmers seeks to exclude seven categories of evidence: (1) evidence related to the Johnson reissue patent (the Re482 patent); (2) evidence related to the Parent patent (the '851 patent); (3) evidence related to reasons for the change in name of one of Dethmers's tow bars; (4) evidence related to Automatic's dismissed counterclaims; (5) evidence related to the value of the original Johnson patent (the '240 patent); (6) the testimony of Automatic's expert concerning the measure of damages; and (7) the evidence challenged in Dethmers's second motion in limine, the October 4, 1994, letter from attorney Brian Laurenzo for Dethmers to Jay Hesse, Automatic's President. The court will consider in this section the admissibility of all of this evidence with the exception of category six. In a subsequent section, the court will combine its discussion of the admissibility of Dethmers's sixth category of evidence with its discussion of Automatic's motion in limine, as both motions go to the admissibility of expert testimony concerning the measure of damages in this case.

### 1. Evidence about the Johnson reissue patent

In the first part of its first motion in limine, Dethmers seeks to exclude evidence of the existence and validity of the Johnson reissue patent (the Re482 patent) pursuant to Federal Rules of Evidence 402 and 403, on the ground that the patent has no bearing on the remaining causes of action. Dethmers notes that this court determined, in the ruling on the first round of dispositive motions, that the Re482 patent is invalid. Citing *Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1568 (Fed.Cir.1993), Dethmers argues that evidence of the court's determination of invalidity will only serve to confuse the jury, waste time, and give rise to unfair negative inferences that Dethmers attempts to enforce invalid patents or to assert meritless lawsuits.

In its memorandum in support of its resistance to Dethmers's first motion in limine, Automatic referred the court to its trial brief. However, the court finds in that brief no specific mention of the Re482 patent, and no mention of the original Johnson '240 patent that relates to the claims now remaining in this lawsuit. Furthermore, in its resistance proper, Automatic stated that it had no objection to that portion of Dethmers's motion in limine seeking to preclude Automatic from arguing or eliciting testimony regarding the court's ruling that the Re482 patent is invalid. Again, although Automatic argued in its resistance that the existence of the Re482 patent would be relevant to a number of issues then in the case, Automatic identified only issues related to the trade secrets and conversion claims that are no longer part of this lawsuit. Thus, the first step in the Rule 403 balancing test has not been satisfied, because the party expected to advance the evidence, Automatic, has *not* "demonstrated the relevance and probative value of the evidence" to any issue before the jury; consequently, the court need not go on to the second step and "determine whether admission of the [evidence] would create an 'undue tendency to suggest decision on an improper basis.' " *See Mulder,* 147 F.3d at 707 (quoting the Notes of the Advisory Committee to FED. R. EVID. 403). Nevertheless, the court finds that, if the evidence is somehow relevant, the decision of the Federal Circuit Court of Appeals in *Mendenhall,* and consequently, the underlying decision by Judge Hansen of the Northern District of Iowa, suggests the appropriate

balance of probative value against potential prejudice. *See Mendenhall,* 5 F.3d at 1568.

In *Mendenhall,* the question was the admissibility of evidence from the official records of other litigation involving the patents in suit. *Id.* at 1566–67. The proffering party urged that the jury should be apprised of the evidence of other litigation, including specifically the other courts' conclusions on the filing date of the patent, the date of invention, anticipation, obviousness, abandonment, non-inventorship, prior art, and various equitable defenses, and the ultimate issue of infringement, and that such evidence was necessary, as well, to cross-examine an expert who had reached a different conclusion on issues of validity and infringement. *Id.* at 1568. Judge Hansen refused to admit the testimony, reasoning that, even though he could see some relevancy, there was significant potential for undue prejudice, noting that " 'the improper basis and the undue tendency to suggest a decision on that basis is the prior decision of the federal district court in Tennessee and affirmance of that decision by the federal circuit, and the jury's tendency to follow those decisions on the validity and infringement,' " without regard to differences in evidence and defenses presented in the case then before the jury. *Id.* (quoting the transcript of Judge Hansen's oral decision). The Federal Circuit Court of Appeals agreed, conducting its own careful analysis. *Id.* at 1568–76.

In the case presently before this court, the patent to which the challenged evidence relates is no longer even at issue. Thus, the tendency for a decision on an improper basis on *remaining* claims, that is, a decision based on this court's determination on a collateral matter not before the jury, is perhaps even more significant than it was in *Mendenhall.* Automatic has not articulated any way in which the evidence of the Re482 patent is so relevant to and probative of an issue relating to remaining

common-law claims—such as the context in which the contract, promissory estoppel, or unjust enrichment claims arise, which might fall under the rubric of " 'secondary' considerations" mentioned by the Federal Circuit Court of Appeals in *Mendenhall,* 5 F.3d at 1573—that the relevance-prejudice balance should be different here.

Therefore, this category of evidence will be excluded under Rule 402, on the ground that it is not relevant, and under Rule 403 on the ground that, if it is somehow relevant, that relevancy is significantly outweighed by the potential for undue prejudice. *See* FED. R. EVID. 403.

### 2. Evidence of the Parent '851 patent

Dethmers next asserts that the existence and scope of the '851 patent, the "Parent patent," are irrelevant to any remaining counts in this case. Dethmers points out that this court dismissed Automatic's counterclaim concerning the validity of the '851 patent in its second ruling on dispositive motions on the ground of lack of subject matter jurisdiction. Dethmers contends that Automatic has argued that, because the Parent patent existed, Dethmers should be precluded from asserting any non-patent claims with respect to Rick Parent's invention. Dethmers also contends that Automatic may try to argue that, because its current products do not infringe the Parent patent, Automatic cannot be violating any rights with respect to the Parent invention. However, Dethmers contends, patent laws do not preclude state-law remedies that are not inconsistent with the purposes of the patent laws. Thus, Dethmers contends that this evidence also is not relevant, and if relevant, is unduly prejudicial. In its brief in support of its resistance to Dethmers's motion in limine, Automatic has again referred the court to its trial brief for arguments for the admissibility of this evidence, but the court again finds no significant discussion in Automatic's trial brief of the relevance of the '851 patent to any *remaining* claim.[2]

---

2. There is, however, significant discussion in Automatic's trial brief of the relevance of

the '851 patent to now-defunct trade secrets claims.

In its resistance proper, Automatic asserts that this evidence is relevant to the "metes and bounds" of any intellectual property or trade secret asserted by Parent, whether intellectual property or trade secrets were converted, the value of any intellectual property or trade secrets misappropriated or converted, and whether any trade secret or intellectual property exists after the issuance of the Parent patent.

Considering the first step of the relevance-prejudice balancing test, *see, e.g., Mulder,* 147 F.3d at 707, the court can see little relevance to the remaining claims of the validity or invalidity of the '851 patent, or whether Automatic infringes or does not infringe that patent, to any claims now remaining in the lawsuit. Automatic's wrongful use of Parent's ideas, as asserted in the claims presently before the court— that is, use in violation of a contract or promise not to use the ideas without compensating Parent—does not have to rise to the level of infringement of the patent. The proper question for remaining claims is what ideas fall within the scope of any contract or promise Parent may have had with or from Automatic, and whether those ideas were subsequently used by Automatic in violation of the contract or promise. The question is *not* whether those ideas fall within the scope of a patent that may or may not be valid or that Automatic may or may not be infringing, or indeed, that may or may not differ in scope from the ideas in question here. For example, Automatic may have improperly used ideas that constitute only dependent claims of the patent, and thus violated Parent's common-law protection without infringing the '851 patent. Whether Automatic's products infringe the Parent patent, which differs in scope from the various ideas that may fall within the scope of the agreement or promise not to use without compensating, is of little, if any, probative value to the question properly before the jury. Nor does the court believe that evidence of the value of the Parent patent, now found invalid, would somehow assist the jury in determining the value of the ideas Parent believes Automatic contracted or promised not to use without compensating him.

Furthermore, turning to the second step of the relevance-prejudice balancing test, introduction of evidence of a patent that differs in scope from Parent's ideas, where Parent's ideas, not his patent, are all that is at issue on the common-law claims, could serve to confuse the issues in the case. *See* FED. R. EVID. 403 (recognizing confusion of issues as a ground for exclusion); *Mulder,* 147 F.3d at 707. Also, the jury can no more consider or decide the question of preemption of common-law remedies by patent-law remedies than could this court, in the face of a lack of subject matter jurisdiction. Thus, to the extent that Automatic might insinuate, and a jury might be induced to conclude, on the basis of this evidence that Dethmers's protection under the '851 patent is sufficient to protect its interests, the insinuation or conclusion would be made on an improper basis for jury consideration or determination in this action. *See* FED. R. EVID. 403; *Mulder,* 147 F.3d at 707 (Rule 403 requires the court to "determine whether admission of the [evidence] would create an 'undue tendency to suggest decision on an improper basis.'") (quoting the Notes of the Advisory Committee to FED. R. EVID. 403).

Therefore, this category of evidence will also be excluded under Rule 402, on the ground that it is not relevant, and under Rule 403 on the ground that, if it is somehow relevant, that relevancy is significantly outweighed by the potential for undue prejudice. *See* FED. R. EVID. 403.

### 3. Name change evidence

■ The third category of evidence that Dethmers seeks to exclude is evidence that it originally marketed its tow bars incorporating the Parent invention under the name "KAR BAR," but later changed the name to "EXCALI–BAR," in light of the fact that Automatic also made a tow bar called the "KAR BAR." Dethmers asserts that there is no trademark infringement

claim by Automatic currently at issue in this litigation, and therefore this evidence is not relevant to remaining claims, and if somehow relevant, would confuse the jury or unfairly prejudice the jury against Dethmers.

Automatic has *not* specifically referred the court to its trial brief for arguments in support of the admissibility of this evidence, but neither has Automatic asserted the relevance of the evidence of the name change for Dethmers's tow bar in its October 7, 1999, Memorandum Of Points And Authorities In Support Of Defendant's Resistance To Plaintiff's Motion In Limine. Instead, Automatic stated in its resistance proper that it would not resist the portion of the motion in limine that requests that there be no evidence or argument relating to the *reason* that Dethmers changed the product name. Automatic contends, however, that the existence of the name change itself is admissible evidence, relevant to assist the jurors in identifying the Dethmers tow bars incorporating Parent's ideas. Automatic asserts that the parties have stipulated to the fact of the name change.

In light of these arguments, the court deems that the irrelevance of evidence of the *reason* for the name change is conceded. *See Mulder,* 147 F.3d at 707 (the proffering party must first establish the relevance of the challenged evidence, before the court must balance relevance against potential prejudice under Rule 403). Furthermore, the court does not believe that the nature or name of any of *Dethmers's* products is relevant to any of the remaining claims in this litigation, which go to use of Parent's ideas in *Automatic's* products, so that the *reasons* for name changes of those products are also irrelevant on this additional ground. FED. R. EVID. 402. To the extent that the evidence might suggest that Dethmers improperly copied the name of its tow bar from Automatic, such evidence would form an improper basis for any decision on claims remaining in this case, and thus poses an undue potential for prejudice. *See* FED. R. EVID. 403; *Mulder,* 147 F.3d at

707 (Rule 403 requires the court to "determine whether admission of the [evidence] would create an 'undue tendency to suggest decision on an improper basis.'") (quoting the Notes of the Advisory Committee to FED. R. EVID. 403).

However, it is likely that the court will refer to the products of both parties in *voir dire* to probe whether any potential jury members use or are familiar with products of either company, and thus might be inclined to make a decision on that basis rather than on the basis of the evidence presented. The parties may also recognize the *fact* that the name changed, as they have stipulated, if doing so is shown to be necessary to a clear identification of products.

Therefore, evidence of the *reason* for the product name change will also be excluded under Rule 402, on the ground that it is not relevant, and under Rule 403 on the ground that, if it is somehow relevant, that relevancy is significantly outweighed by the potential for undue prejudice. *See* FED. R. EVID. 403. Again, the *fact* of the name change is subject to no such exclusion.

### 4. Evidence of dismissed counterclaims

■ Next, Dethmers notes that this court has dismissed Automatic's counterclaims of "false marking," pursuant to 35 U.S.C. § 292, and "false advertising," pursuant to 15 U.S.C. § 1125(a). Consequently, Dethmers argues that Automatic should be precluded from presenting evidence related to any allegedly false statements or false patent markings, because such evidence does not tend to make any fact properly at issue any more or less probable, and admission of that evidence could potentially confuse the jury. Automatic again refers the court to its trial brief for argument in support of the admissibility of this evidence, but the court again finds the trial brief devoid of any argument that evidence of "false marking" or "false advertising" is relevant to any remaining claim. Likewise, in its resistance proper,

Automatic only argues that the evidence is relevant to claims of misappropriation of trade secrets and conversion and proof of damages on these claims. Thus, the court once again concludes that Automatic has conceded the irrelevance of this evidence to claims remaining in this action, which do not include either trade secrets or conversion claims. *See Mulder*, 147 F.3d at 707 (the proffering party must first establish the relevance of the challenged evidence, before the court must balance relevance against potential prejudice under Rule 403). To the extent that the evidence of "false marking" and "false advertising" could somehow be relevant to any claim remaining in this lawsuit, the potential for the evidence to induce a jury to find against Dethmers on its claims on the improper basis that it is a "bad actor" with respect to marking and advertising is simply too great to allow the evidence to be admitted. *Id.* (balance of relevance against prejudice is the second step of the Rule 403 analysis).

Therefore, this category of evidence will also be excluded under Rule 402, on the ground that it is not relevant, and under Rule 403 on the ground that, if it is somehow relevant, that relevancy is significantly outweighed by the potential for undue prejudice. *See* Fed. R. Evid. 403.

### 5. *Evidence of the value of the original Johnson patent*

The antepenultimate category of evidence that Dethmers seeks to exclude is evidence of the value of the original Johnson patent. Dethmers contends that Automatic has argued that, if tow bars embodying the Parent invention fall within the scope of claims in the Johnson '240 patent, the value of the Parent invention is somehow limited to the value of the Johnson patent. Because the scope of patent and common-law protection are, and indeed must be, different, Dethmers argues that the jury could be confused into improperly measuring the value of the Parent invention by the value of the Johnson patent. Automatic again refers the court to its trial brief for argument in support of the admissibility of this evidence, but the court again finds the trial brief devoid of any argument that evidence of the value of the Johnson patent is relevant to any remaining claim. In its resistance proper, however, Automatic asserts that the '240 patent is comparable technology to the Parent Invention, and thus its value is relevant to any damages on claims of misappropriation of trade secrets, conversion, and "quasi-contract," which presumably includes Dethmers's claims of promissory estoppel and unjust enrichment. In oral arguments, counsel for Automatic again asserted that the amount Dethmers paid to acquire the Johnson patent is indicative of a reasonable royalty for Automatic's allegedly improper use of the Parent Invention.

Notwithstanding identification of "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit" as a factor in determining a reasonable royalty in patent infringement suits, *see, e.g., Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970), *modified and aff'd*, 446 F.2d 295 (2d Cir.), *cert. denied*, 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971), the court is not satisfied that the value of the '240 patent has any relevance to damages on Dethmers's unjust enrichment and promissory estoppel claims, which will be treated in more detail below. The patent and the Parent Invention are not identical in scope and the record suggests that at the time that Automatic allegedly entered into a contract with Parent or otherwise promised to compensate him for the use of his ideas, Automatic was ignorant of the existence of the '240 patent. To the extent the evidence of the value of the Johnson patent could somehow be relevant, the court finds that it could serve to confuse the issues in the case, again, because the scope of the patent and the ideas at issue in the present claims are not identical. *See* Fed. R. Evid. 403 (recognizing confusion of issues as a ground for exclusion); *Mulder*, 147 F.3d at 707.

Therefore, this category of evidence will also be excluded under Rule 402, on the

ground that it is not relevant, and under Rule 403 on the ground that, if it is somehow relevant, that relevancy is significantly outweighed by the potential for undue prejudice. *See* FED. R. EVID. 403.

### 6. Evidence of the October 4, 1994, letter

■ The penultimate item of evidence Dethmers seeks to exclude is a letter of October 4, 1994, offered as an exhibit by Automatic. The letter is from Brian Laurenzo, one of Dethmers's attorneys, to Jay Hesse, President of Automatic. Dethmers contends that the letter sets forth certain claims against Automatic and asserts that products manufactured by Automatic infringe the original Johnson patent, and would infringe the Parent patent when issued. In its motion, Dethmers asserts further that it understood the letter would be offered to refute its claim of trade secret protection for the Parent Invention. Dethmers contends that the letter should be excluded, because Dethmers has dismissed the trade secret claim to which the letter might have been relevant. Even if the letter somehow remains marginally relevant, Dethmers contends that the potential for undue prejudice and confusion is significant, because it might place counsel for Dethmers in the position of being, in effect, a witness for Automatic, or being put to the choice of testifying to refute improper arguments related to the letter. Finally, Dethmers contends that the letter is hearsay. Automatic offered no written response to this motion in limine prior to the oral arguments, and offered no response at oral arguments.

The court cannot see the relevance of the letter to any of the remaining claims in this lawsuit. The letter does not make it more or less probable that Automatic had a contract or made a promise to Richard Parent concerning use or compensation for use of the Parent Invention in Automatic's tow bars, that Automatic breached the contract or promise, what injury Parent may have suffered as a result of such a breach, or what might be the proper measure of damages for such injury. *See* FED. R. EVID. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Thus, this evidence once again fails to satisfy the requirements of Rule 402, and should be excluded. Even if the evidence could somehow be relevant to issues remaining in this case, on the required balancing of relevance and prejudice, the court concludes that the evidence would likely serve only to confuse or misdirect the jury from matters properly at issue. *See* FED. R. EVID. 403; *Mulder,* 147 F.3d at 707.

Therefore, this exhibit will also be excluded under Rule 402, on the ground that it is not relevant, and under Rule 403 on the ground that, if it is somehow relevant, that relevancy is significantly outweighed by the potential for undue prejudice. *See* FED. R. EVID. 403.

### C. Evidence Of The Measure Of Damages

The court now turns to what is undoubtedly the most contentious of the issues raised in the parties' motions in limine and the issues to which the parties devoted the bulk of their attention during oral arguments. Dethmers and Automatic each seek to exclude testimony by the other's expert concerning the measure of damages in this case. In its motion, Dethmers contended that this case involves claims for disgorgement of profits under a variety of theories and that its expert has properly calculated Automatic's profits on the basis of the "incremental profit" method, while Automatic's expert has improperly used a "net operating profit" method.[3] Because

---

3. Dethmers explains that the incremental profit method calculates first the defendant's gross profits improperly obtained, then reduces that amount only by the costs that are variable. It does not allow deduction from gross profits of fixed expenses, which is the method Dethmers contends has been used by Automatic's expert. Automatic asserts that Dethmers has mislabelled the method its ex-

Automatic's expert has used a method of calculating damages that is incorrect as a matter of law, Dethmers contended that his damages calculations are irrelevant, or would confuse and mislead the jury. Dethmers also contended that Automatic's expert's damages calculation should be excluded under FED. R. EVID. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

In its own motion in limine, Automatic contended that Dethmers's expert's calculations of "disgorgement" of Automatic's profits or a reasonable royalty on the sale of the AVENTA tow bar, the sale of RV mounted tow bars other than the AVENTA tow bar, and sales of other towing accessories using the "incremental costs" methodology is improper. Automatic pointed out that Dethmers does not challenge the qualifications or actual calculations of Automatic's own expert, but instead challenges only his methodology. However, Automatic contended that its expert's methodology, not Dethmers's expert's, is in fact the one accepted by courts. Automatic also contended that Dethmers has mischaracterized its expert's method as the "net operating profit" or "net operating loss" method, when it is properly characterized as the well-accepted "full absorption method." Automatic also contended that there is no basis for seeking to recover profits or royalties on any tow bars other than the AVENTA tow bar, because the AVENTA is the only tow bar that allegedly improperly incorporated the Parent Invention.

### 1. Damages available on the claims asserted

The court was disturbed that, in their clash over the proper method of calculat-

ing damages in this case, which both parties from time to time characterized as a case seeking "disgorgement" of profits under various theories, the parties had not adequately considered the applicability of Nebraska law, and hence the calculation of damages under Nebraska law, for the claims asserted. The court brought its concerns to the parties' attention in a telephonic conference on October 10, 1999. The court requested supplemental letter briefs from the parties, which the court received by facsimile on October 12, 1999. In its letter brief, Automatic contends that, under Nebraska law, disgorgement of profits is not a measure of damages available on any of the remaining claims; rather, the appropriate remedy is a reasonable royalty to which evidence of Automatic's profits is not relevant. Dethmers, however, contends in its supplemental letter brief that disgorgement of profits is available under Nebraska law as the measure of damages on claims for unjust enrichment and promissory estoppel.[4]

At oral arguments, counsel for Dethmers quite conscientiously conceded that the case law on the applicable method of calculating profits, and hence damages, was not as clear as he had thought, and that both the method used by his expert and the method used by Automatic's expert had currency in the case law; thus, he suggested that it might be necessary to take evidence before the court could decide what method of calculating profits (and hence damages) was appropriate in this case. The court finds that this concession obviates any need for the court to consider Dethmers's objections to Automatic's expert on the basis of Rule 702 or *Daubert*. In response to the court's question about the relevance of any calculation of profits if

pert has used to calculate its profits, and contends that the "full absorption" method actually used by its expert permits the defendant to deduct all overhead expenses in the same percentage as sales of the goods at issue bear to the defendant's total sales.

4. At oral arguments, the court *sua sponte* raised the question of whether it should certi-

fy to the Nebraska Supreme Court the question of the availability under Nebraska law of disgorgement of profits as the measure of damages on any of the remaining claims. Because the parties did not unanimously agree to certification of the question at this point in the litigation, the court has decided not to certify the question.

the only measure of damages available was found to be a reasonable royalty, counsel for Dethmers asserted, first, that he still believed disgorgement of all of Automatic's profits was appropriate, because it was improper for a wrongdoer to obtain any benefit from its wrongdoing, and that damages on Dethmers's non-contract claims were not limited to expectation damages. However, in the second place, even if a reasonable royalty was the only appropriate measure of damages, Dethmers's counsel argued that Automatic's profits were still relevant to the determination of a reasonable royalty.

Because this court determined in the first round of dispositive motions that Nebraska law applies to the remaining claims, *see Dethmers I*, 23 F.Supp.2d at 1002–05, the court's analysis of the motions in limine regarding the expert's profit and damages calculations begins with the damages available on the remaining claims under Nebraska law.

### a. *Breach of contract*

The Nebraska Supreme Court recently reiterated that, under Nebraska law, "in a breach of contract case, the ultimate objective of a damages award is to put the injured party in the same position the injured party would have occupied if the contract had been performed, that is, to make the injured party whole." *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320, 329 (1998) (internal quotation marks omitted); *see also Bachman v. Easy Parking of Am., Inc.*, 252 Neb. 325, 562 N.W.2d 369, 373 (1997) ("The proper measure of damages in a contract action is the losses sustained by reason of a breach."); *Poppen v. Residential Mortgage Servs., Inc.*, 5 Neb.App. 115, 556 N.W.2d 49, 54–55 (1996) ("In a breach of contract action, the ultimate objective of a damages award is to put the injured party in the same position that the injured party would have occupied if the contract had been performed, that is, to make the injured party whole."). It appears that, to the extent that Nebraska law contemplates a damage award of profits in a breach-of-

contract case, it is the profit the *non-breaching* party would have realized under the contract that is the measure of damages. *See Bruning Seeding Co. v. McArdle Grading Co.*, 232 Neb. 181, 439 N.W.2d 789, 792 (1989) ("When a breach of contract occurs, the plaintiff is entitled to the full profit he would have realized under the contract."); *see also Meisinger Earth Moving, Inc. v. Nebraska*, 212 Neb. 554, 324 N.W.2d 387, 389–90 (1982) (the award of the plaintiff's expected profits is, however, discretionary).

In light of these authorities, the court finds that Nebraska law does not support a measure or calculation of damages for breach of contract based on *Automatic's* profits from improper use of the Parent Invention; rather, "the proper measure of Parent's damages (through Dethmers) for breach of a contract not to use Parent's invention without compensating him would be the compensation that Parent expected to receive under the contract, if the contract had been performed," *i.e.*, a reasonable royalty or licensing fee. *See, e.g., Radecki*, 583 N.W.2d at 329. This is the amount of damages that would make Parent "whole." *Id*. On the other hand, disgorgement of Automatic's profits as damages for breach of contract would constitute a windfall not authorized under Nebraska law. Not surprisingly, then, Dethmers does not assert in its supplemental letter brief that Nebraska law makes disgorgement of Automatic's profits the proper measure for damages on Dethmers's breach-of-contract claim.

However, that is not to say that evidence of Automatic's profits, and the proper way in which to calculate them, is necessarily irrelevant. Automatic's profits may be relevant, if the purported contract with Parent provided for a royalty based on a share of profits, rather than a royalty on a per unit basis, or a flat licensing fee. Some courts have found the wrongful user's profits may also be relevant to the determination of a reasonable royalty in other contexts, *see, e.g., Georgia–Pacific*

*Corp.,* 318 F.Supp. at 1120 (identifying as factors in the determination of a reasonable royalty in patent infringement suits "[t]he established profitability of the product made under the patent," "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions," and "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer"), so that profits may be relevant to determination of a reasonable royalty for breach of contract in the absence of specification in the contract of the method for calculating them in the parties agreement. Nonetheless, the court will consider below whether evidence of Automatic's profits is either not relevant, or so marginally relevant, to the determination of a reasonable royalty on breach of contract as to be inadmissible.

### b. Promissory estoppel

■ As the Nebraska Supreme Court recently explained, "Promissory estoppel provides for damages as justice requires and does not attempt to provide the plaintiff damages based upon the benefit of the bargain." *Goff–Hamel v. Obstetricians & Gynecologists, P.C.,* 256 Neb. 19, 588 N.W.2d 798, 801 (1999) (citing *Rosnick v. Dinsmore,* 235 Neb. 738, 457 N.W.2d 793, 801 (1990)). Furthermore, "[t]he usual measure of damages under a theory of promissory estoppel is the loss incurred by the promisee in reasonable reliance on the promise, or 'reliance damages.'" *Rosnick,* 457 N.W.2d at 800. Indeed, the Nebraska Supreme Court explained that "[r]eliance damages are relatively easy to determine, whereas the determination of 'expectation' or 'benefit of the bargain' damages available in a contract action requires more detailed proof of the terms of the contract." *Id.* The reasonableness of a plaintiff's reliance on the defendant's promise

and subsequent reassurances is an issue for a jury to determine. *Id.*

These explications of the damages available under Nebraska law on a claim of promissory estoppel clearly do not support a damages award based on disgorgement of Automatic's profits or the relevance or admissibility of any evidence of any calculation of Automatic's profits. Dethmers appears to suggest in its supplemental letter brief that an award of damages "as justice requires" on a promissory estoppel claim could include an award of all of Automatic's profits for products incorporating the Parent Invention. The court does not believe that this language is an invitation to award as damages all of Automatic's profits from the sale of products using the Parent Invention, because it appears to the court that damages for promissory estoppel, that is, an enforceable promise in the absence of a contract, should not exceed the damages available had the parties actually reached an agreement. It should be noted that the Nebraska Supreme Court stated that "[p]romissory estoppel ... *does not attempt* to provide the plaintiff damages based upon the benefit of the bargain," *Goff–Hamel,* 588 N.W.2d at 801 (emphasis added), rather than stating that promissory estoppel damages *are not limited to* damages based upon the benefit of the bargain. Thus, the language the Nebraska Supreme Court used does not suggest that the scope of damages for promissory estoppel should be *wider* than the scope of damages available for breach of contract. Furthermore, the explication of the measure of damages on a claim of promissory estoppel in *Rosnick,* focusing on reliance damages, *see Rosnick,* 457 N.W.2d at 800, does not support the relevance and admissibility of any calculation of Automatic's profits or a claim for disgorgement of profits as the appropriate measure of damages on a promissory estoppel claim, and indeed, Dethmers does not press the point.

### c. Unjust enrichment

In its supplemental letter brief, Dethmers concentrates its arguments for the admissibility of evidence of Automatic's profits, and specifically, Automatic's profits as calculated by Dethmers's expert, on its unjust enrichment claim. Dethmers contends that Nebraska courts have relied upon the Restatement of Restitution in determining issues of unjust enrichment. Dethmers contends further that the proper measure of restitution damages under the Restatement should be the greater of the reasonable value of the benefit the other party received, or the extent to which the other party's property has increased in value or his other interests have been advanced. Dethmers contends further that it is proper to require the unjustly enriched party to disgorge all of what it obtained, even if that exceeds the abused party's expectation interest. Automatic counters that under Nebraska law, the abused party is entitled only to a reasonable portion of the profits of the unjustly enriched party, *i.e.,* here only a "reasonable royalty."

The Nebraska Supreme Court has explained that " '[t]he doctrine of quasi-contracts has been supplanted in modern times by the doctrines of "unjust enrichment" and "restitution," but, in essence, is the same.' " *Professional Recruiters, Inc. v. Oliver,* 235 Neb. 508, 456 N.W.2d 103, 106 (1990) (quoting *Siebler Heating & Air Conditioning v. Jenson,* 212 Neb. 830, 326 N.W.2d 182, 184 (1982)). "A plaintiff is permitted to plead both express contract and quasi-contract in the same petition." *Id.* at 107. Furthermore,

> " 'A quasi contract is a contract implied in law and usually has its origin in the principle that a person shall not be allowed to enrich himself unjustly at the expense of another.' " *Haggard Drilling, Inc. v. Greene,* 195 Neb. 136, 142, 236 N.W.2d 841, 845 (1975). We stated in *Hoffman v. Reinke Mfg. Co.,* 227 Neb. 66, 69, 416 N.W.2d 216, 219 (1987), "It has been said that where benefits have been received and retained under such circumstances that it would be inequita-

> ble and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving and retaining the benefits to pay their reasonable value."

*Professional Recruiters,* 456 N.W.2d at 108. Although the court in *Professional Recruiters* found that the trial court erred as a matter of law in finding that the defendants were not unjustly enriched by retaining the benefit of an applicant's employment without paying the plaintiff employee search firm the reasonable value of its services in providing the applicant's name, the court remanded the matter for determination of whether the $9,000 fee claim constituted the reasonable value of the plaintiff's services. *Id.* at 109.

Similarly, in *Hoffman,* where the claim was that the defendant had been unjustly enriched by selling irrigation systems conceived by the plaintiff, the court stated,

> We ... are concerned only with the contract implied in law theory of recovery based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another. *Haggard Drilling, Inc. v. Greene,* 195 Neb. 136, 236 N.W.2d 841 (1975). It has been said that where benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving and retaining the benefits to pay their reasonable value. *Haggard Drilling, Inc. v. Greene, supra; Bush v. Kramer,* 185 Neb. 1, 173 N.W.2d 367 (1969).

*Hoffman,* 416 N.W.2d at 219. Of more particular interest is the court's consideration of the proper measure of damages under circumstances remarkably similar to those presented here:

> [T]he evidence leads to the conclusion that Reinke Manufacturing developed Hoffman's concept for a corner irrigation system, is selling a system based upon that idea, and is profiting there-

from. Under such circumstances, it would be unjust, inequitable, and unconscionable not to require Reinke Manufacturing to pay Hoffman *a reasonable portion* of the profits Reinke Manufacturing makes from selling systems conceived by Hoffman. Accordingly, the law implies the existence of a contract requiring Reinke Manufacturing *to pay Hoffman a reasonable royalty on each such corner irrigation system it sells.* *Hoffman,* 416 N.W.2d at 220 (emphasis added).

Here, Dethmers contends that Automatic developed Parent's concept for a tow bar, is selling a tow bar or tow bars and accessories based upon Parent's idea, and is profiting therefrom. Thus, in light of *Hoffman,* this court believes it is bound to hold that, if Dethmers's allegations are proved, "it would be unjust, inequitable, and unconscionable not to require [Automatic] to pay [Dethmers, as Parent's assignee] *a reasonable portion* of the profits [Automatic] makes from selling systems conceived by [Parent]." *Id.* (emphasis added). "Accordingly," if Dethmers's allegations are proved, "the law implies the existence of a contract requiring [Automatic] *to pay [Dethmers] a reasonable royalty on each such [tow bar system or accessory] it sells." Id.* (emphasis added). Dethmers's citations to the law of other jurisdictions and other authorities, holding that on an unjust enrichment claim, the unjustly enriched party may be compelled to make restitution of the entirety of the benefit it has received, is unavailing in the face of the *Hoffman* decision. In other words, under Nebraska law, it appears to this court that, if Dethmers's allegations are proved, Automatic can be construed to be *enriched* to the extent of its profits on tow bars and accessories using Parent's ideas, but that Automatic is *unjustly enriched* only to the extent that it has failed to pay Dethmers, as Parent's assignee, a reasonable royalty on sales of such products. *See id.*

Dethmers contends, however, that *Hoffman* is not on the proper procedural footing for its comments on the measure of damages to be more than dicta. Dethmers characterizes the case as considering whether the appeal had been properly perfected and whether the action was time-barred. However, the court's reading of the *Hoffman* decision indicates that the substantive claim of unjust enrichment was also before the court, because the defendant had asserted that it was entitled to judgment as a matter of law, apart from its contention that the suit was time-barred. *See Hoffman,* 416 N.W.2d at 218. Thus, the *Hoffman* court's conclusions about the measure of damages on an unjust enrichment claim, and a claim that factually stands on all fours with the claim presented here, is *not* dicta. Therefore, the court reiterates, under Nebraska law, if Dethmers proves the allegations on which its unjust enrichment claim is founded, "the law implies the existence of a contract requiring [Automatic] *to pay [Dethmers] a reasonable royalty on each such [tow bar system or accessory] it sells." Id.* at 220.

Nor is the court persuaded by Dethmers's assertions that unjust enrichment is not a contract claim, and thus the damages award should not be limited to contract-like expectation damages. The Nebraska Supreme Court has specifically identified unjust enrichment as a "quasi-contract" or contract "implied in law." *See Professional Recruiters,* 456 N.W.2d at 108; *Hoffman,* 416 N.W.2d at 219. Thus, the nature of an unjust enrichment claim does not suggest that tort-like damages, or damages depriving a wrongdoer of more than it would lose by breaching a contract, are appropriate. Instead, not only is the contract implied in law, but contract damages are also implied.

## 2. The admissibility of evidence of Automatic's profits

 The court has determined from its survey of the damages available on the remaining claims under Nebraska law that each supports an award of damages based only on a "reasonable royalty," or, in the

case of promissory estoppel, to a reasonable royalty or Parent's reliance damages, not an award based on disgorgement of Automatic's profits. The court suggested above, in its discussion of Dethmers's breach-of-contract claim, that Automatic's profits might be relevant to a calculation of Parent's damages, *if* the parties' agreement was that he would be paid a royalty on a share of profits basis, rather than a per unit or flat licensing fee basis. The court must also consider the somewhat broader question of whether Automatic's profits are relevant to determination of a reasonable royalty as damages on Dethmers's unjust enrichment claim, or to Parent's reliance damages on a promissory estoppel claim. Thus, the court must consider whether evidence of Automatic's profits, and in what manner they are calculated, is relevant and admissible on the remaining claims.

As to the unjust enrichment claim, the *Hoffman* decision again provides guidance: In *Hoffman,* the Nebraska Supreme Court indicated that a "reasonable royalty" should be determined on a per unit basis, rather than on the basis of a percentage of profits on the sale of all products. *See id.* ("[T]he law implies the existence of a contract requiring Reinke Manufacturing to pay Hoffman a reasonable royalty *on each such corner irrigation system* it sells.") (emphasis added). Thus, evidence of Automatic's profits, calculated by any method, does not appear to be relevant, and therefore is not admissible. *See* FED. R. EVID. 402. The proper questions are what constitutes a reasonable royalty per unit for such items, and how many of such items has Automatic sold?

More generally—that is, for the purposes of either the unjust enrichment or the breach-of-contract claim—in determining a reasonable royalty, the standard is the amount of money that the owner of the idea would accept from someone who desires to obtain a license to use the invention without either party being forced to enter into a license. *See, e.g., Vermont Microsystems, Inc. v. Autodesk, Inc.,* 138 F.3d 449 (2d Cir.1998) ("Our definition

read as follows: A reasonable royalty award attempts to measure a hypothetically agreed value of what the defendant wrongfully obtained from the plaintiff. By means of a 'suppositious meeting' between the parties, the court calculates what the parties would have agreed to as a fair licensing price at the time that the misappropriation occurred."); *Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108 (Fed.Cir. 1996) (approving an instruction stating the following: "A reasonable royalty is the amount of money which the owner of a patent would accept who is desirous of licensing another to use her patent in return for a royalty, but is not forced by financial need or other compulsion to do so, and the amount which a person would be willing to pay as a royalty who is desirous of obtaining a license to use the invention, but who is not compelled to do so.... In determining a reasonable royalty, you are to imagine that a hypothetical negotiation took place between J. Baker and Maxwell at or about the time that J. Baker first infringed the patent. You must assume that Maxwell was willing to grant a license and that J. Baker was willing to accept one."), *cert. denied,* 520 U.S. 1115, 117 S.Ct. 1244, 137 L.Ed.2d 327 (1997); *Century Wrecker Corp. v. E.R. Buske Mfg. Co.,* 913 F.Supp. 1256 (N.D.Iowa 1996) ("Courts attempting to establish a reasonable royalty determine that royalty on the basis of a 'hypothetical negotiation' between the plaintiff and defendant, which establishes what royalty a willing licensor and willing licensee would have negotiated at the time the infringement began."). The court acknowledges that profits figure in the factors commonly used to determine a reasonably royalty, the so-called *Georgia–Pacific* factors. *See Georgia–Pacific Corp.,* 318 F.Supp. at 1120 (identifying as some of the factors in the determination of a reasonable royalty in patent infringement suits "[t]he established profitability of the product made under the patent," "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses

to allow for the use of the invention or analogous inventions," and "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer"). However, if the standard is a hypothetical agreement on a royalty at the outset of the relationship, then the court has considerable doubt that the actual profits earned on the products using the idea at issue should be relevant, or more than marginally relevant.

Finding that Automatic's profits may be no more than marginally relevant to a determination of a reasonably royalty in this case, the court turns to the second step in the relevance-prejudice balancing test of Rule 403, consideration of potential prejudice. FED. R. EVID. 403; *Mulder*, 147 F.3d at 707. Here, the court finds that admission of any evidence concerning Automatic's profits presents a serious potential for confusing or misleading the jury as to the value of Parent's ideas at the time the parties either reached an agreement or failed to do so. The parties dispute the appropriateness of each other's profits calculations, and the process to prove or disprove each other's calculations will be confusing and time-consuming. That process also presents a serious potential to distract the jury from the central issue in the case, which is whether Dethmers has proved circumstances under which it is entitled to a reasonable royalty at all. In light of these dangers, the court concludes that evidence of Automatic's profits, however calculated, should be excluded pursuant to Rule 403. *See* FED. R. EVID. 403 (permitting relevant evidence to be excluded if its probative value is outweighed by, *inter alia*, "confusion of issues, or misleading the jury, or by considerations of undue delay, [or] waste of time").

### 3. On what items is evidence of damages calculations admissible?

As part of its motion in limine, Automatic asserted that Dethmers's expert had improperly included in her damages calculations damages for sales of non-AVENTA tow bars and non-AVENTA accessories, when the AVENTA tow bar is the only product of Automatic alleged to incorporate ideas from the Parent Invention. Dethmers contends in resistance to this part of the motion in limine, however, that it will show that Automatic has incorporated ideas from the Parent Invention in products including AVENTA tow bars and non-AVENTA tow bars and accessories. Since the relevance of damages calculations based on sales of non-AVENTA products must await the presentation of evidence that such products incorporate ideas from the Parent Invention, the court cannot make a pre-trial determination on the admissibility of such damages calculations. Thus, this part of Automatic's motion in limine must be denied.

### 4. Summary

Thus, as to the question of the admissibility of each party's expert's damages calculations, the court concludes that no party's expert's calculation of Automatic's profits is relevant, because there is no claim on which disgorgement of Automatic's profits is the appropriate measure of damages, and to the extent that profits may be relevant to calculation of appropriate damages, the potential for confusion, misleading the jury, or undue delay outweighs the marginal relevance of evidence of Automatic's profits. Both motions in limine will be granted to that extent, and evidence of a calculation of Automatic's profits will be precluded. A determination of the admissibility of damages calculations based on sales of non-AVENTA products must await the presentation of evidence that such products incorporate ideas from the Parent Invention.

### III. CONCLUSION

1. As to Dethmers's first motion in limine,

 a. That part of the motion pertaining to evidence about the Johnson reissue

patent is **granted,** and such evidence is **excluded.**

b. That part of the motion pertaining to evidence of the Parent '851 patent is **granted,** and such evidence is **excluded.**

c. That part of the motion pertaining to evidence of the reason for a product name change is **granted,** and such evidence is **excluded.** The fact of such a name change is, however, admissible.

d. That part of the motion pertaining to evidence of dismissed counterclaims is **granted,** and such evidence is **excluded.**

e. That part of the motion pertaining to evidence of the value of the original Johnson patent is **granted,** and such evidence is **excluded.**

2. As to Dethmers's second motion in limine, as to evidence of the October 4, 1994, letter, the motion is **granted,** and such evidence is **excluded.**

3. Finally, as to category six of Dethmers's first motion in limine and Automatic's motion in limine, pertaining to evidence of the parties' expert's calculations of Automatic's profits, the motions are **granted.** Neither expert's calculation of Automatic's profits is relevant or admissible on the claims remaining in this litigation. A decision on that part of Automatic's motion in limine to exclude damages calculations based on sales of non-AVEN-TA products is **reserved,** because that determination must await the presentation at trial, or the absence thereof, of evidence that such products incorporate ideas from the Parent Invention.

**IT IS SO ORDERED.**